Amanda **CABANISS**, Administrator of the ESTATE OF Kevin CABANISS, Plaintiff,

v.

CITY OF RIVERSIDE, et al., Defendants.

No. 3:04cv218.

United States District Court, S.D. Ohio, Western Division.

March 20, 2006.

Dwight Dean Brannon, Dayton, OH, for Plaintiff.

Boyd W. Gentry, Jeffrey Charles Turner, Surdyk, Dowd & Turner Co., L.P.A., Dayton, OH, for Defendants.

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY (DOC. # 35); DECISION AND ENTRY OVERRULING IN PART AND OVERRULING, AS MOOT, IN PART PLAINTIFF'S MOTION IN LIMINE AND/OR FOR SANCTIONS (DOC. # 39); DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION TO STRIKE (DOC. # 41); DECISION AND ENTRY SUSTAINING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT GEORGE BROWN (DOC. # 47); DECISION AND ENTRY SUSTAINING MOTION OF DEFENDANTS OTHER THAN GEORGE BROWN FOR SUMMARY JUDGMENT (DOC. # 60); DECISION AND ENTRY OVERRULING, AS MOOT, MOTION OF DEFENDANTS OTHER THAN GEORGE BROWN TO STRIKE TRANSCRIPT OF ALBERT FUGATE INTERVIEW (DOC. # 64); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION OF DEFENDANTS OTHER THAN GEORGE BROWN TO STRIKE DECLARATION OF JAMES MARSH (DOC. # 66); DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR LEAVE TO FILE AFFIDAVIT OF ALBERT FUGATE (DOC. # 68); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION OF DEFENDANTS OTHER THAN GEORGE BROWN TO STRIKE AFFIDAVIT AND DECLARATION OF ALBERT FUGATE (DOC. # 77); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, District Judge.

Kevin Cabaniss ("Cabaniss") spent much of May 21, 2003, drinking at the residence of his friend, Albert Fugate ("Fugate"), located at 6015 Hendon Avenue in the City of Riverside, Ohio ("Riverside"). Cabaniss became so intoxicated that he was vomiting and speaking incoherently.[1] After having became frustrated with Cabaniss' behavior inside his home, Fugate took his friend outside and left him there until he was able to sober up. Left outside by Fugate, Cabaniss walked to a neighboring house, where he broke the glass in an outdoor lamp. Cabaniss calmed down and returned to a grassy area between Fugate's and his neighbor's houses, where he laid down. Thereafter, someone then called 911, and Defendants David Craine ("Craine"), Jason Carlton ("Carlton") and Robert Naff ("Naff"), police officers employed by Riverside, were dispatched to that residence. Craine was the first to arrive, followed shortly thereafter by Carlton and then Naff. Craine observed Cabaniss lying on the ground, acting agitated and clenching his fists.[2] Nevertheless, Cabaniss appeared to be coherent to the officers, although under the influence of alcohol.

When the officers arrived, a number of Cabaniss' friends, including Fugate, came outside the residence. Craine asked one of them whether Cabaniss was diabetic. That individual indicated that he did not believe that Cabaniss suffered from that medical condition, although he had "freaked out" after consuming a large

---

1. He had consumed approximately one and one-half pints of whiskey.

2. In response to an officer's question about whether he needed help, Cabaniss growled, rather than answering.

amount of alcohol. In response to an officer's inquiry, Fugate indicated that Cabaniss was suicidal and that he had attempted suicide in the past.[3] Craine requested that paramedics be sent to the location in order to check upon Cabaniss' medical condition.

When the officers attempted to communicate with Cabaniss, he spit at them, as a result of which Carlton told Cabaniss that he (Carlton) would kick him (Cabaniss) in the teeth if he spit at the officers again. When Cabaniss insisted upon spitting at Carlton again, the officer flipped Cabaniss onto his stomach, handcuffed him and placed him under arrest, rather than kicking out his teeth. In order to accomplish that end, Carlton attempted to place Cabaniss' hands behind his back, while he (Cabaniss) was lying on his stomach. Cabaniss, however, resisted, and Craine assisted Carlton in handcuffing Cabaniss. While Carlton walked Cabaniss to his cruiser, the latter cursed and threatened to kill the officers.

After Cabaniss had been seated in the back of Carlton's cruiser, Defendants Edward Kronenberger ("Kronenberger") and Shon Smith ("Smith"), paramedics employed by Riverside, arrived at the scene. Kronenberger opened the door to the cruiser and Cabaniss got out. The paramedic introduced himself and assured Cabaniss that he was there to help him, asking him if he was injured or needed medical attention. Cabaniss responded to Kronenberger's questions with additional cursing and threats against the paramedic and his family. Cabaniss would not permit Kronenberger to touch him during the paramedic's assessment of his medical condition. The paramedic noticed that Cabaniss smelled of alcohol and was agitated. However, since he was not able to determine that Cabaniss was injured or in need of medical attention, Kronenberger told him to sit in the back of the police cruiser.

After assisting Cabaniss back into the cruiser, Kronenberger spoke with the bystanders at the scene. One of them told Kronenberger that Cabaniss had been drinking and that he had destroyed a light. That individual also told the paramedic that Cabaniss had been acting mental, which Kronenberger interpreted as describing Cabaniss' recent behavior. Kronenberger found that Cabaniss' speech was slurred, that he smelled of alcohol and that his behavior was consistent with the use of same. Kronenberger also concluded that Cabaniss had not exhibited any signs of mental illness. Believing that a complete assessment of Cabaniss had been completed, Kronenberger and Smith, the paramedics, left Fugate's residence on Hendon.[4]

As Carlton started to drive away from that location, with Cabaniss in the back seat of his cruiser,[5] Craine pulled his cruiser next to that of his fellow officer. While the two officers conversed, Craine noticed that Cabaniss was pushing his feet on the plexiglass divider in Carlton's cruiser, as well as hitting his head on it. Although Carlton warned Cabaniss a number of times to stop kicking and hitting his head on the plexiglass, the latter ignored those warnings. Carlton then rolled down the back window in his cruiser and told Cabaniss that he would be sprayed with pepper spray if that behavior continued. Cabaniss ignored that warning as he had the others. As a consequence, Carlton sprayed Cabaniss with pepper spray, and the latter lowered his feet and stopped kicking the plexiglass divider.

---

3. Fugate also told the officers Cabaniss' name.

4. Naff also left that location.

5. Carlton was intending to drive Cabaniss to the jail in his cruiser.

In order to clean the pepper spray from Cabaniss, Carlton transported him to the Riverside Police/Fire Station.[6] Craine also proceeded to that location. Upon arriving at the Riverside Police/Fire Station, Carlton parked his cruiser, and Naff, who had also returned to that location, took a picture of Cabaniss with pepper spray on him. The officers then rinsed that substance off Cabaniss' face, using a garden hose. Thereafter, as Carlton was using that hose to clean the door of his cruiser, Cabaniss indicated that he was feeling better and asked if he could stand up outside the cruiser. Both Craine and Carlton told him that he could not. Although Cabaniss initially complied with the officers' directive, causing Craine to step away from the cruiser, he apparently changed his mind, stood straight up, took a few steps and started to fall or to stumble forward. Carlton reached for Cabaniss and was able to put a hand on him; however, Cabaniss was able to break loose, thus foreclosing Carlton's efforts to prevent him from falling. Cabaniss fell, striking his head on the concrete floor.

Carlton helped Cabaniss into a sitting position, and both he and Craine noticed a bump on Cabaniss' head. Craine went inside the Station to obtain medical assistance. Kronenberger and a firefighter accompanied Craine outside. When he got outside, Kronenberger saw Cabaniss sitting next to Carlton. Although the officer was attempting to control him, Kronenberger observed Cabaniss purposefully lunge away from Carlton and strike his head on the ground. Kronenberger and other Riverside Fire Department personnel treated Cabaniss at the Riverside Police/Fire Department and transported him to the Miami Valley Hospital. Cabaniss subsequently died as a result of swelling on his brain.

After he learned that Cabaniss had died, Defendant George Brown ("Brown"), who was then Chief of the Riverside Police Department, ordered an internal investigation, which was conducted by officers employed by the Huber Heights Police Department.

Plaintiff brings this litigation, seeking compensation for damages suffered as a result of the death of her father, Kevin Cabaniss ("Cabaniss"). She brings this action against Riverside, James Onello ("Onello"), Ken Curp ("Curp"), Sara Lommatzsch ("Lommatzsch"), Shirley Reynolds ("Reynolds"), Johnie Doan ("Doan"), Vern Best ("Best"), Mike Smith, Jim Weaver ("Weaver"), Brown, D.K. Johnson ("Johnson"), Carlton, Craine, Naff, Dan Alig ("Alig"), Kronenberger, and Smith.[7] All individual Defendants, except Johnson, have been sued in their individual and official capacities.[8] In her Amended Complaint (Doc. # 23), Plaintiff sets forth 23 claims for relief, to wit: 1) a claim under 42 U.S.C. § 1983 ("§ 1983"), alleging that Craine, Carlton and Naff violated Cabaniss' rights under the Fourth and Eighth Amendments by using excessive force and cruel and unusual punishment (First Claim for Relief); 2) a claim under § 1983, alleging that Craine, Carlton and Naff violated Cabaniss' rights under the federal constitution by failing to protect him (Second Claim for Relief); 3) a claim under § 1983, alleging that Kronenberger and Smith vio-

---

**6.** The jail would not accept a person until the residue of pepper spray had been removed.

**7.** Onello is alleged to be the City Manager, while Curp is alleged to be Riverside's Mayor. Lommatzsch, Reynolds, Doan, Best, Mike Smith and Weaver are alleged to be members of the Riverside City Council. Brown was the Chief of Police for Riverside when the events giving rise to this lawsuit occurred. He was subsequently replaced by Johnson. Alig is the Chief of the Fire Department in Riverside.

**8.** Johnson has been sued in his official capacity alone.

lated Cabaniss' rights under the federal constitution by failing to protect him (Third Claim for Relief); 4) a claim under § 1983, alleging that Craine, Carlton and Naff violated Cabaniss' rights under the Due Process Clause of the Fourteenth Amendment by failing to protect him (Fourth Claim for Relief); 5) a claim under § 1983, alleging that Kronenberger and Smith violated Cabaniss' rights under the Due Process Clause of the Fourteenth Amendment by failing to protect him (Fifth Claim for Relief); 6) a claim under § 1983, alleging that Craine, Carlton and Naff violated Cabaniss' rights under the federal constitution by failing to provide him appropriate medical care (Sixth Claim for Relief); 7) a claim under § 1983, alleging that Kronenberger and Smith violated Cabaniss' rights under the federal constitution by failing to provide him appropriate medical care (Seventh Claim for Relief); 8) a claim under § 1983, alleging that Craine, Carlton and Naff violated Cabaniss' rights under the Due Process Clause of the Fourteenth Amendment by failing to provide him appropriate medical care (Eighth Claim for Relief); 9) a claim under § 1983, alleging that Kronenberger and Smith violated Cabaniss' rights under the Due Process Clause of the Fourteenth Amendment by failing to provide him appropriate medical care (Ninth Claim for Relief); 10) a survivorship claim brought under § 2305.21 of the Ohio Revised Code against Craine, Carlton, Naff, Kronenberger and Smith, predicated upon the incidents giving rise to First through Ninth Claims for Relief (Tenth Claim for Relief); 11) a wrongful death claim brought in accordance with § 2105.01 of the Ohio Re-

vised Code against Craine, Carlton, Naff, Kronenberger and Smith, predicated upon the incidents giving rise to First through Ninth Claims for Relief (Eleventh Claim for Relief); 12) a survivorship claim brought under § 2305.21, which does not appear to differ from the Tenth Claim for Relief (Twelfth Claim for Relief); 13) a civil conspiracy claim against Riverside, Craine, Carlton, Naff, Kronenberger, Smith and "others," alleging that they conspired to deprive Cabaniss of his rights under the United States and Ohio Constitutions, as well as under federal and state law, by failing to provide him adequate medical care, and fabricating a false and exculpatory version of events in order to prevent Cabaniss and his heirs from obtaining a remedy (Thirteenth Claim for Relief);[9] 14) a claim under § 1983 against Riverside, alleging that it is liable for the constitutional violations of Craine, Carlton and Naff, because those violations were caused by policies, practices and customs of Riverside (Fourteenth Claim for Relief); 15) a claim under § 1983 against Riverside, alleging that it is liable for the constitutional violations of Kronenberger and Smith, because those violations were caused by policies, practices and customs of Riverside (Fifteenth Claim for Relief); 16) a claim under § 1983 against Riverside, alleging that it is liable for the constitutional violations of Craine, Carlton and Naff, because those violations were caused by its failure to train those officers (Sixteenth Claim for Relief); 17) a claim under § 1983 against Riverside, alleging that it is liable for the constitutional violations of Kronenberger and Smith, because it failed

---

9. The Plaintiff has not indicated whether her Thirteenth Claim for Relief is predicated upon the Ohio common law or the civil rights conspiracy statute, 42 U.S.C. § 1985(3). That claim, however, must be predicated upon the common law of Ohio, since a claim under § 1985(3) is limited to conspiracies where

there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Plaintiff does not contend that such an animus motivated the Defendants' actions toward Cabaniss.

to train those paramedics (Seventeenth Claim for Relief); 18) a claim under § 1983 against Craine, Carlton and Naff, alleging that they violated Cabaniss' constitutional rights by handcuffing him, spraying him with pepper spray and with a hose and refusing to allow him to stand, thus placing him in a dangerous and potentially dangerous position while creating a special relationship which imposed upon them the obligation of protecting Cabaniss and providing medical care to him (Eighteenth Claim for Relief); 19) a claim under § 1983 and state law against Craine, Carlton and Naff, alleging that they deprived Cabaniss of his constitutional rights and assaulted and battered him, by restraining him, throwing him into a police cruiser, spraying him with pepper spray and water and allowing him to hurt himself (Nineteenth Claim for Relief); 20) a claim under state law that Craine, Carlton, Naff, Kronenberger and Smith acted willfully and wantonly and, thus, are not immune from Plaintiff's state law claims against them (Twentieth Claim for Relief); 21) a state law claim of intentional infliction of emotional distress against Craine, Carlton, Naff, Kronenberger and Smith (Twenty–First Claim for Relief); 22) a claim under § 1983 against Riverside, alleging it is liable for the constitutional violations of its employees under a respondeat superior theory (Twenty–Second Claim for Relief); and 23) a claim under state law against Riverside, alleging that it is liable for the wrongful acts of Craine, Carlton, Naff, Kronenberger and Smith, as a result of the failure to investigate the actions of those Defendants and to correct, punish and or prosecute them (Twenty–Third Claim for Relief).

This case is now before the Court on the following motions, to wit: Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35); Plaintiff's Motion in Limine and/or for Sanctions (Doc. # 39); Plaintiff's Motion to Strike (Doc. # 41);

Brown's Motion for Summary Judgment (Doc. # 47); Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60); Motion of Defendants Other Than George Brown to Strike the Transcript of the Interview of Albert Fugate (Doc. # 64); Motion of Defendants Other Than George Brown to Strike the Declaration of James Marsh (Doc. # 66); Plaintiff's Motion for Leave to File Affidavit of Albert Fugate (Doc. # 68); Motion of Defendants Other Than George Brown to Strike Affidavit and Declaration of Albert Fugate (Doc. # 77). Herein, the Court rules upon those motions, beginning its analysis by setting forth the standards it must apply whenever it rules upon a motion for summary judgment, then discussing related motions together.

## I. Standards Applicable to Motions for Summary Judgment

■ Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favor-

ably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary

judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to sum-

mary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. Plaintiff's Motion in Limine and/or for Sanctions (Doc. # 39) and Motion to Strike (Doc. # 41)

With her Motion in Limine and/or for Sanctions (Doc. # 39), Plaintiff requests that the Court prevent the Defendants other than George Brown from calling any lay or expert witness, because those Defendants have failed to disclose the identity of such witnesses in accordance with the requirements of Rule 26(a)(1) of the Federal Rules of Civil Procedure and this Court's Preliminary Pretrial Order (Doc. # 17). Alternatively, the Plaintiff requests that the Court impose sanctions on those Defendants. With her Motion to Strike (Doc. # 41), Plaintiff argues that the Court should strike the lay witness list of those Defendants, because they failed to make the initial disclosures required by Rule 26(a)(1). As a means of analysis, the Court will initially discuss these motions as they relate to lay witness, following which it will turn to Plaintiff's request to exclude expert witnesses.

In its Preliminary Pretrial Order (Doc. # 17), the Court directed that the parties make the disclosures required by Rule 26(a)(1) by October 14, 2004. Rule 26(a)(1) requires, *inter alia,* that a parties disclose the identity of individuals with discoverable information.[10] According to Plaintiff, the Defendants other than George Brown have utterly failed to disclose the identity of any individual with discoverable infor-

mation. The Plaintiff is mistaken in that regard. These Defendants have attached, to the memoranda in opposition to the Plaintiff's motions, copies of the correspondence from their counsel to Plaintiff's counsel on October 14, 2004, disclosing the identity of individuals with discoverable information. *See* Docs. ## 45 and 46. Accordingly, the Court concludes that the Defendants other than George Brown have not violated Rule 26(a)(1) or this Court's Preliminary Pretrial Order (Doc. # 17), by failing to disclose the identity of individuals with discoverable information. Therefore, the Court rejects the Plaintiff's request that it prevent those Defendants from introducing testimony from any lay witness.

This Court's Preliminary Pretrial Order (Doc. # 17) required that parties disclose primary expert witnesses, together with those witnesses' reports, by December 16, 2004, and that they disclose rebuttal expert witnesses, together with their reports, by January 17, 2005. In her Motion in Limine and/or for Sanctions (Doc. # 39), Plaintiff states that the Defendants other than George Brown have failed to identify any expert witnesses. In their memorandum opposing this motion, those Defendants have not addressed Plaintiff's motion as it relates to expert witnesses. *See* Doc. # 45. Given that these Defendants have not ever indicated in this litigation that they intend to call an expert witness at trial, the Court is compelled to conclude that they do not intend to call such a witness. Therefore, this branch of Plaintiff's Motion in Limine and/or for Sanctions (Doc. # 39) is moot.

Accordingly, the Court overrules in part and overrules, as moot, in part Plaintiff's Motion in Limine and/or for Sanctions

---

**10.** In accordance with that Rule, parties must also disclose certain categories of documents.

Plaintiff does not contend that any Defendant has failed to make that disclosure.

(Doc. # 39), and it overrules her Motion to Strike (Doc. # 41).

### III. Motion of Defendants Other Than George Brown to Strike the Transcript of the Interview of Albert Fugate (Doc. # 64), Motion of Defendants Other Than George Brown to Strike the Declaration of James Marsh (Doc. # 66), Plaintiff's Motion for Leave to File Affidavit of Albert Fugate (Doc. # 68) and Motion of Defendants Other Than George Brown to Strike Affidavit and Declaration of Albert Fugate (Doc. # 77)

These motions raise the question of what evidence the Court will consider when it rules upon the pending motions for summary judgment. As a means of analysis, the Court will initially rule upon the three motions which relate to evidence from Fugate, following which it will turn to the request to strike the declaration of James Marsh.

### A. Motion of Defendants Other Than George Brown to Strike the Transcript of the Interview of Albert Fugate (Doc. # 64), Plaintiff's Motion for Leave to File Affidavit of Albert Fugate (Doc. # 68) and Motion of Defendants Other Than George Brown to Strike Affidavit and Declaration of Albert Fugate (Doc. # 77)

To support her Motion for Summary Judgment as to Liability (Doc. # 35), Plaintiff has submitted, *inter alia*, a copy of the transcript of an interview of Fugate by Sergeant Rick May and Detective Eric Spicer of the Huber Heights Police Department. The Defendants other than George Brown have requested that the Court strike that transcript, arguing that the transcript is inadmissible hearsay and that it has not been authenticated.[11] *See* Doc. # 64. Although Plaintiff has opposed that request (*see* Doc. # 71), she has also filed a motion requesting leave of Court to file an affidavit from Fugate, to which a copy of the transcript is attached. *See* Doc. # 68. This Court sustains the Plaintiff's Motion for Leave to File Affidavit of Albert Fugate (Doc. # 68). It bears emphasis, however, that the Court has merely concluded that a copy of the transcript of Fugate's interview should be part of the record in this litigation. Whether any portions of that document may be considered when ruling on the pending motions for summary judgment must await the Court's ruling on the request of the Defendants other than Brown to strike Fugate's affidavit/declaration (Doc. # 77), with which they renew their challenges to the transcript. As a consequence of sustaining Plaintiff's motion seeking leave to file that affidavit/declaration, the Court overrules, as moot, the Motion of Defendants Other Than George Brown to Strike the Transcript of the Interview of Albert Fugate (Doc. # 64).

■ The Defendants other than Brown have responded to Fugate's affidavit/declaration by filing their Motion to Strike Affidavit and Declaration of Albert Fugate (Doc. # 77). The Plaintiff has not responded to that motion.[12] Therein, the Defendants initially argue that the Plaintiff has failed to authenticate the copy of

---

11. Plaintiff attempted to authenticate that document with the affidavit from her counsel in which he indicated counsel for the Defendants other than Brown had provided the transcript in discovery.

12. In its Entry filed on November 3, 2005 (Doc. # 79), this Court noted that the motion of Defendants other than George Brown seeking to strike Fugate's affidavit/declaration had not been fully briefed, given that it had just been filed and that it could not rule upon the pending motions for summary judgment until it had been ruled upon. Nevertheless, the Plaintiff has not responded to that motion.

the transcript of the interview of Fugate and that, therefore, the Court must disregard the copy of the transcript attached to this affidavit/declaration. Rule 901(a) of the Federal Rules of Evidence provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The Court concludes that sufficient evidence has been presented to allow it to find that the document claimed to be the transcript of the interview of Fugate is what it purports to be. As an initial matter, Plaintiff's counsel has submitted an affidavit, in which he states that the counsel for these Defendants provided a copy of the transcript to him in response to a discovery response.[13] Indeed, these Defendants state in their memoranda opposing Plaintiff's Motion in Limine and/or for Sanctions (Doc. # 39) and her Motion to Strike (Doc. # 41) that they produced a copy of the transcript to Plaintiff's counsel, before this litigation was initiated. *See* Doc. ## 45 and 46. The Defendants other than Brown have not provided evidence or even suggested that the copy of the transcript appended to Fugate's affidavit/declaration is different from the one which their counsel had furnished to their counterpart for the Plaintiff. Moreover, the Defendants other than Brown have not supplied evidence, tending to demonstrate that their counsel forged a document and foisted it off on Plaintiff's counsel as a copy of the interview of Fugate. Accord-

ingly, the Court concludes that the Plaintiff has met her burden under Rule 901(a) to demonstrate that the document which she asserts is a transcript of the interview of Fugate is, indeed, such a transcript and that, therefore, she has met her burden of establishing its authenticity.[14]

■ The Defendants other than Brown argue in the alternative that the transcript of Fugate's interview must be stricken, because that transcript is inadmissible hearsay. This Court agrees. The transcript is unquestionably hearsay, i.e., an out of court statement offered to prove the truth of the matters set forth therein. *See* Fed.R.Evid. 801(c). Nevertheless, Plaintiff argues that the transcript is admissible pursuant to the public records exception to the hearsay rule. *See* Fed.R.Evid. 803(8). This Court cannot agree. Rule 803(8) provides:

(8) *Public records and reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

13. That affidavit is attached to Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35).

14. It bears emphasis that Fugate states in ¶ 2 of his affidavit/declaration that the transcript attached thereto is a true and accurate copy of the transcript of his interview (although he does not state that his statements within that transcript are true and accurate). Although

the Defendants other than Brown argue that this statement is contradicted by his deposition testimony, this Court is unable to address that argument, since those Defendants have neglected to furnish a copy of that deposition. Accordingly, the statements in ¶ 2 of Fugate's affidavit/declaration lend support to this Court's conclusion that the Plaintiff has met her burden of authentication under Rule 901(a).

The Defendants other than Brown argue that the transcript of the interview of Fugate does not come within Rule 803(8), because it merely recorded statements by Fugate who was a third party, rather than a public official with a duty to report.[15] The Sixth Circuit has held that statements by third-parties are not admissible in accordance with Rule 803(8), even though they are contained in a police report. *Miller v. Field*, 35 F.3d 1088, 1091–92 (6th Cir.1994). In accordance with *Miller*, this Court concludes that the transcript of the interview of Fugate is inadmissible hearsay. Moreover, the transcript of the interview of Fugate cannot be considered the functional equivalent of an affidavit or a deposition, since there is no indication that he had been sworn before being interviewed. Therefore, the Court will not consider that document when ruling on the pending motions for summary judgment.

In his affidavit/declaration, Fugate sets forth information concerning the events which gave rise to this litigation, in addition to attempting to authenticate the transcript of his interview. The Defendants other than Brown argue that the Court should strike a number of paragraphs set forth in that affidavit/declaration. The Court will discuss those arguments in the order presented.

■ *First,* in the first sentence of ¶ 14 of his affidavit/declaration, Fugate states that he had been informed that emergency personnel refused to transport Cabaniss to a hospital and took him to jail instead, because he had threatened them. The Defendants other than Brown argue that the Court must strike those statements, because they constitute inadmissible hearsay. Unquestionably, the first sentence of paragraph 14 of Fugate's affidavit/declaration is an out of court statement offered to prove the truth of the matters set forth therein and that, therefore, it is hearsay. *See* Fed.R.Evid. 801(c). Moreover, given that the Plaintiff has not responded to this motion, she has not argued that the statements set forth in the first sentence of ¶ 14 may be considered in accordance with an exception to the hearsay rule. Therefore, this Court will strike the first sentence of ¶ 14 of Fugate's affidavit/declaration as inadmissible hearsay, and will not consider the statements set forth therein when ruling on the pending requests for summary judgment.

■ *Second,* the Defendants other than Brown argue that the Court must strike portions of ¶¶ 15 and 16 of the affidavit/declaration, because Fugate has failed to establish that he has personal knowledge of the information set forth in those portions of those paragraphs.[16] It

**15.** These Defendants also argue that the Court should strike the affidavit/declaration of Fugate, because it is untimely. Certainly, the better course would have been for Plaintiff to present an affidavit from that witness with her Motion for Summary Judgment (Doc. # 35), rather than attempting to present Fugate's knowledge to the Court with the copy of the transcript of his interview. Nevertheless, the Court will not strike the affidavit/declaration for being untimely. Given that Fugate sets forth in his affidavit/declaration some of the information contained in the earlier filed transcript, the Defendants have not been prejudiced by the untimely submission of that document. Therefore, the Court will

decline to strike the affidavit/declaration of Fugate, because it was untimely.

**16.** These Defendants have also moved to strike the first and second sentences of ¶ 14 of Fugate's affidavit/declaration, arguing that he lacked personal knowledge of the matters set forth therein. Given that the Court has stricken the first sentence of ¶ 14 as inadmissible hearsay, it is not necessary to address the arguments in this regard concerning that sentence. In the second sentence of ¶ 14, Fugate states that he did not hear Cabaniss threaten emergency medical personnel. In the absence of evidence from these Defendants that Fugate has a physiological or psychological condition that prevents him from

can not be questioned that an affidavit or declaration submitted in support of or in opposition to a motion for summary judgment must be based upon personal knowledge. *See* Rule 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). *See also, Weberg v. Franks,* 229 F.3d 514, 526 (6th Cir.2000) (noting that statements in affidavits that have not been made on personal knowledge must be disregarded when ruling on a motion for summary judgment). In the second sentence of ¶ 15 of his affidavit/declaration, Fugate states that Cabaniss had a number of incidents with police officers during his life and had a history of reckless behavior and, in the second sentence of ¶ 16, states that he understood that Cabaniss gave a substantial portion of his earnings to his children. This Court agrees with the Defendants other than Brown that Fugate has failed to affirmatively show in his affidavit/declaration that he has personal knowledge of and is, therefore, competent to testify about the matters set forth in the second sentences of ¶¶ 15 and 16 of that document. Therefore, the Court will not consider those sentences when ruling upon the pending motions for summary judgment.

▇▇ *Third,* the Defendants other than Brown request that the Court strike the first sentence of ¶ 15 of the affidavit/declaration of Fugate, wherein he states that it is his opinion that the actions of the arresting officers antagonized Cabaniss and resulted in his uncooperative and aggressive behavior. According to these Defendants, those statements are not admissible as lay opinion testimony under Rule 701 of the Federal Rules of Evidence, which permits a lay witness to give opinions that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *JGR, Inc. v. Thomasville Furniture Industries, Inc.,* 370 F.3d 519, 525 (6th Cir.2004). According to these Defendants, the statements in the first sentence of ¶ 15 are not rationally based upon Fugate's perception. The Court disagrees. He could observe the interaction of the officers and Cabaniss and draw an opinion as to how the latter reacted to the actions of the former. The Court agrees with these Defendants, however, that the second part of that sentence (i.e., that the actions of the arresting officers resulted in Cabaniss' uncooperative and aggressive behavior) is not based upon Fugate's personal perception, in the absence of an explanation as to what actions of Cabaniss caused him to reach the opinion about the cause and effect relationship.

In sum, the Court sustains in part and overrules in part the Motion of the Defendants other than George Brown to Strike Affidavit and Declaration of Albert Fugate (Doc. # 77). The Court sustains that motion as it relates to the transcript of the interview of Fugate, as well as the following parts of his affidavit/declaration, to wit: the first sentence of ¶ 14, all of ¶ 15, except the statement that the arresting officers antagonized Cabaniss, and the second sentence of ¶ 16. Otherwise, the Court has overruled that motion.

## B. Motion of Defendants Other Than George Brown to Strike the Declaration of James Marsh (Doc. # 66)

To support her request for summary judgment and to oppose those filed by the

---

having personal knowledge of what he has not heard, the Court will not strike the second sentence of ¶ 14 for lack of personal knowledge.

Defendants, the Plaintiff has submitted, among other evidence, the declaration of James Marsh ("Marsh"). The Plaintiff has retained Marsh to provide expert testimony in the areas of police policy and procedure. In ¶¶ 5 and 13–15 of his declaration, he sets forth the following opinions:

¶ 5. It is more probable than not that the injury to Cabaniss on May 21, 2003, was caused by a pattern or practice of deliberate indifference by the Riverside Police Department.

¶ 13. The lack of supervision, inadequate training and failure to follow departmental guidelines represent deliberate indifference to Cabaniss' safety on the part of Riverside and Craine, Carlton and Naff.

¶ 14. The policy and practice of the Riverside Police Department of allowing supervisors to violate the rules and allowing officers to be unsupervised and to violate the law was more probably than not a contributory factor to Cabaniss' injury and represents deliberate indifference to the safety, well-being and handling of individuals with suicidal behavior or mental illness.

¶ 15. Riverside had a pattern and practice of deliberate indifference regarding staffing needs, supervision, discipline, directives [sic], training and the attitude of officers toward public. In addition, this pattern and practice of deliberate indifference had a negative impact within the Police Department upon its guidelines regarding the use of force and the handling of intoxicated, mentally ill or suicidal persons, and this pattern and practice more probably than not was a contributory factor of the injury to and death of Cabaniss.

In their motion (Doc. # 66), the Defendants other than Brown argue that the Court should strike Marsh's declaration, because the opinions he has expressed therein do not comply with Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Plaintiff disagrees. *See* Doc. # 70. Although the caption of this motion indicates that it is directed at the entirety of Marsh's affidavit, these Defendants only expressly address ¶¶ 5 and 13–15. Accordingly, the Court considers striking only those paragraphs and begins its analysis by reviewing the standards it must apply whenever a party argues that expert opinion evidence is not admissible under Rule 702 and *Daubert.*

▮▮▮▮ Rule 702 provides: [17]

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert*, the Supreme Court "established a general gatekeeping [or screening] obligation for trial courts" to exclude from trial expert testimony that is unreliable and irrelevant. *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (citations omitted). This gatekeeping function applies "when considering *all* expert testimony, including testimony based on technical and other specialized knowledge." *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir.2000), citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)

---

17. Rule 702 was amended effective December 1, 2000, in order to make its language consistent with *Daubert* and its progeny. *Nelson v.* *Tennessee Gas Pipeline Co.*, 243 F.3d 244, 250 n. 4 (6th Cir.), *cert. denied*, 534 U.S. 822, 122 S.Ct. 56, 151 L.Ed.2d 25 (2001).

(emphasis in original). In determining whether evidence is admissible under *Daubert*, the District Court must determine whether the evidence "both rests on a reliable foundation and is relevant to the task at hand." *Id.* In assessing relevance and reliability, the district court must examine whether the expert is proposing to testify to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. *Jahn v. Equine Servs., PSC,* 233 F.3d 382, 388 (6th Cir. 2000). This involves a preliminary inquiry as to whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. *Id.* Some of the factors that may be used in such an inquiry include: 1) whether the theory or technique can be tested, 2) whether it has been subjected to peer review and publication, 3) whether the potential rate of error is known, and 4) its general acceptance. *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786; *Hardyman v. Norfolk & W. Ry. Co.,* 243 F.3d 255, 260 (6th Cir.2001). "This inquiry is a flexible one, with an overarching goal of assessing the 'scientific validity and thus the evidentiary relevance and reliability' of the principles and methodology underlying the proposed expert testimony." *United States v. Langan,* 263 F.3d 613, 621 (6th Cir.2001) (citation omitted). "[A] trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.,* 526 U.S. at 152, 119 S.Ct. 1167. Of course, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). The proponent of expert opinion evidence has the burden of demonstrating by the preponderance of the proof that the evidence complies with Rule 702 and *Daubert. Daubert,* 509 U.S. at 592 n. 10, 113 S.Ct. 2786; *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 244, 250 (6th Cir.), *cert. denied,* 534 U.S. 822, 122 S.Ct. 56, 151 L.Ed.2d 25 (2001).[18]

■ As an initial matter, the Defendants other than Brown suggest that the Court must strike certain paragraphs in Marsh's declaration, because he merely sets forth legal conclusions therein. This Court agrees. In *Berry v. City of Detroit,* 25 F.3d 1342, 1353 (6th Cir.1994), the Sixth Circuit in an excessive force case brought under § 1983 held that, although a properly qualified expert witness may testify that a municipality is lax in the discipline of its officers and about the effects of such laxity, he may not testify that such a policy constitutes deliberate indifference. In the ¶¶ 5 and 13–15 of his declaration, Marsh states that certain actions constituted deliberate indifference. In accordance with *Berry,* this Court concludes that it must strike those paragraphs from Marsh's declaration.

Moreover, in *Brainard v. American Skandia Life Assur. Corp.,* 432 F.3d 655 (6th Cir.2005), the Sixth Circuit recently noted that "[a]n expert opinion submitted in the context of a summary judgment motion must be more than a conclusory

18. This Court has not conducted a hearing in order to determine whether Marsh's opinions violate Rule 702 and *Daubert.* The Sixth Circuit has stressed that the District Court possesses discretion to determine whether to hold such a hearing. *Nelson,* 243 F.3d at 248. Herein, the Court declines to order such a hearing, because Plaintiff, although at one time requesting a general oral argument on all pending motions (since waived), has not requested an oral and evidentiary *Daubert* hearing for the purpose of supporting her Motion for Summary Judgment and opposing those of the Defendants.

assertion about ultimate legal issues." *Id.* at 663–64 (internal quotation marks and citations omitted). Rather, such an affidavit must "set forth facts . . .," which "outline a line of reasoning arising from a logical foundation." *Id.* (internal quotation marks and citations omitted). Herein, ¶¶ 5 and 13–15 of Marsh's declaration merely set forth his conclusory assertion about an ultimate legal issue, rather than setting forth facts which "outline a line of reasoning arising from a logical foundation."

Accordingly, the Court sustains the Motion of Defendants Other Than George Brown to Strike the Declaration of James Marsh (Doc. # 66). The Court will not consider ¶¶ 5 and 13–15 of that document when ruling on the pending motions for summary judgment. However, the remainder of the declaration will be considered.

IV. *Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35), Motion for Summary Judgment of Defendant George Brown (Doc. # 47) and Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60)*

Having decided what evidence it can consider, the Court turns to the three pending motions seeking summary judgment. With her motion, Plaintiff seeks summary judgment as to liability on her claims against Craine, Carlton, Naff, Kronenberger, Smith and Riverside. *See* Doc. # 35. With his motion, Brown requests that the Court enter summary judgment in his favor on all of Plaintiff's claims against him. *See* Doc. # 47. With their motion, the Defendants other than Brown request summary judgment on all of Plaintiff's claims against them. *See* Doc. # 6. As a means of analysis, the Court will

initially rule upon Brown's motion, following which it will discuss the other two motions together. When ruling upon the Defendants' two motions seeking summary judgment, the Court must construe the evidence in the manner most favorable to the Plaintiff. However, when ruling upon that filed by the Plaintiff, the Court must construe the evidence in the manner most favorable to the Defendants.

A. *Motion for Summary Judgment of Defendant George Brown (Doc. # 47)*

■■■■ Brown was the Chief of the Riverside Police Department when the events giving rise to this litigation occurred.[19] Plaintiff has sued Brown in his individual and official capacities. The Court need not tarry long on Plaintiff's official capacity claims against Brown. It is well-settled that a claim against an officer or employee of a governmental entity, in his or her official capacity, is a claim against the governmental entity itself. *See e.g., Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Thus, in *E.J. v. Hamilton County, Ohio,* 707 F.Supp. 314, 318–19 (S.D.Ohio 1989), Judge Rubin dismissed the official capacity claims against Hamilton County Commissioners, since Hamilton County itself was a party, making the official capacity claims redundant. Similarly, herein, Brown's municipal employer, Riverside, is a Defendant in this litigation. Therefore, official capacity claims against Brown are redundant, and the Court sustains Brown's Motion for Summary Judgment (Doc. # 47), as it relates to such claims.

Turning to individual capacity claims against Brown, a close review of Plaintiff's Amended Complaint (Doc. # 23) fails to reveal any individual capacity claims which have been pled specifically against him.

---

19. In his motion, Brown argues that the Court should not consider the transcript of the interview of Fugate. For the reasons set forth above, the Court will disregard that transcript when ruling upon Brown's and the other motions for summary judgment.

Indeed, Brown is only mentioned three times in that pleading, to wit: in the caption;[20] in ¶ 10 where he is identified as the Chief of the Riverside Police Department and an employee, agent, servant and representative of Riverside; and in ¶ 104 where it is alleged that he had previously warned Riverside about a lack of policies and personnel in its Police Department and a failure to train and to supervise officers, and that he requested an assessment of the department by officials of the Kettering or Huber Heights Police Department.[21] In addition, Plaintiff alleges in ¶ 34 of her Amended Complaint that the failure of the Chief of Police of Riverside and other officials of that municipality to implement and to communicate appropriate policies and procedures to officers and paramedics, and to train and to supervise such individuals in the use of pepper spray and the medical needs of prisoners constitutes gross negligence and deliberate indifference, entitling Plaintiff to recover punitive damages from Riverside. In bears emphasis that ¶ 34 appears in the section of Plaintiff's Amended Complaint, wherein she sets forth the factual background upon which her claims are based, rather than in one of the 23 claims for relief included in that pleading.

In his motion, Brown argues that he is entitled to summary judgment on any claims Plaintiff may have intended to assert against him, because the evidence fails to raise a genuine issue of material fact as to whether he can be held liable. Plaintiff, in contrast, contends that Brown can be held liable under both federal and state law, because he is responsible for the actions of Craine, Carlton and Naff, which Plaintiff contends led to Cabaniss' death. As a means of analysis, the Court will

initially set forth the standards it must apply whenever a party seeks to impose liability under § 1983 on a supervisor such as Brown, for the alleged constitutional deprivations by those he supervises.

In *Turner v. City of Taylor*, 412 F.3d 629 (6th Cir.2005), the Sixth Circuit reviewed the standards which must be applied to determine whether a supervisory employee such as Brown can be held liable under § 1983 for the constitutional actions of the employees he or she supervises:

> This Court has explained the standards for supervisory liability under § 1983 as follows:
>
> > [T]he § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.
>
> *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984) (citing *Hays v. Jefferson County*, 668 F.2d 869, 872–74 (6th Cir. 1982)); *see also Mills v. City of Barbourville*, 389 F.3d 568, 580 (6th Cir.2004) ("In order to establish liability pursuant to § 1983, the plaintiff must prove that the defendant, as a supervisory official, is personally responsible for the alleged unconstitutional actions that caused his injury.... At a minimum, the plaintiff must demonstrate that a supervisory official condoned, encouraged, or knowing-

---

20. Plaintiff has listed all Defendants in the caption of her Amended Complaint.

21. Paragraph 104 is part of Plaintiff's Fourteenth Claim for Relief, which is a policy or practice claim under § 1983 against Riverside.

ly acquiesced in the alleged unconstitutional misconduct.") (emphasis added in *Mills;* citing *Bellamy,* 729 F.2d at 421); *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir.1999) (holding that § 1983 plaintiff must prove that officer "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on. . . . Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act ... and cannot be based upon simple negligence.") (citing *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1246 (6th Cir.1989)). *Id.* at 643.

 Herein, there is no evidence that Brown was personally involved in the events which gave rise to this litigation. Moreover, the Plaintiff has failed to supply evidence which raises a genuine issue of material fact concerning the question of whether Brown condoned, encouraged or knowingly acquiesced in the alleged unconstitutional misconduct by Craine, Carlton and Naff.[22] Nevertheless, Plaintiff arguably implies in her Amended Complaint that Brown can be held liable along with other Defendants for failing to investigate the events giving rise to this litigation or to take remedial action as a result of those events. *See* Doc. # 23 at ¶ 154. Based upon the following, this Court concludes that the Plaintiff has failed to demonstrate that the evidence raises a genuine issue of material fact on whether Brown can be held liable for failing to investigate those events or to take remedial action.

In *Marchese v. Lucas,* 758 F.2d 181, 182 (6th Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987), the Sixth Circuit held that a failure to investigate may give rise to supervisory liability under § 1983. Therein, "there was, in fact, no serious investigation conducted" by any supervisory officials. *Id.* at 188. In *Walker v. Norris,* 917 F.2d 1449, 1457 (6th Cir.1990), the Sixth Circuit noted that, in *Marchese,* it had indicated that post-event actions of a supervisor could give rise to liability under a supervisory liability theory for failure to investigate the events. However, the *Walker* court indicated that such liability was limited to instances where no investigation had been conducted. Therein, the Sixth Circuit concluded that the District Court had properly granted a directed verdict in favor of two supervisory employees, because an investigation had been conducted. Thus, in *Broyles v. City of Dayton,* 1997 WL 1764763 (S.D.Ohio 1997), *affirmed,* 1998 WL 476154 (6th Cir.1998), this Court indicated that a supervisory employee can be held liable for failure to investigate, only "if there is a complete failure to conduct a meaningful investigation." *Id.* at *7. Herein, there is no evidence tending to support the proposition that there was a failure to conduct a meaningful investigation. On the contrary, at Brown's request, officers employed in the Huber Heights Police Department conducted an investigation into the events which led to this litigation. As part of their investigation, offi-

---

22. In support of the proposition that the evidence raises a genuine issue of material fact as to whether Brown condoned, encouraged or knowingly acquiesced in the alleged unconstitutional misconduct by Craine, Carlton and Naff, Plaintiff has cited Brown's deposition testimony to the effect that, since the buck stopped with him, he had to take responsibility for everything that occurred when he was Chief of the Riverside Police Depart-

ment. *See* Doc. # 55 at 6 (citing Brown Dep. at 61). Quite simply, Brown's willingness to take responsibility for the actions of Riverside's officers when he was its Chief of Police does not raise a genuine issue of material fact as to whether he condoned, encouraged or knowingly acquiesced in the alleged unconstitutional misconduct by Craine, Carlton and Naff.

cers in that department interviewed the participants in and witnesses to the events surrounding Cabaniss' death.

 Plaintiff also argues that liability can be imposed upon Brown under § 1983, because he is responsible for failing to train Riverside's police officers and to enforce its policies and procedures, and for permitting inexperienced officers to operate without sufficient supervision. As an initial matter, it should be noted that a failure to train municipal employees, which constitutes deliberate indifference, can serve as the basis for imposing liability on a municipal employer for the constitutional torts committed by its employees. *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). It cannot be questioned that liability can be imposed on a supervisor when he has condoned, encouraged or knowingly acquiesced in the alleged unconstitutional violations of his subordinates. The Plaintiff, however, has failed to cite any decision by the Supreme Court or the Sixth Circuit, holding that liability can also be imposed upon a supervisor for the constitutional violations of his subordinates, when he has failed to train those subordinates and that failure amounted to deliberate indifference to the safety of others.[23] In the absence of such authority in support of this theory of liability, this Court is not free to amend the standards for supervisory liability, restated by the Sixth Circuit in *Turner, supra,* to include failure to train subordinates.

 The other bases of liability (i.e., failure to enforce policies and procedures and permitting officers to work without adequate supervision) all involve some sort of alleged failure of Brown to supervise Riverside's Police Department. In *Shehee v. Luttrell,* 199 F.3d 295 (6th Cir.1999), *cert. denied,* 530 U.S. 1264, 120 S.Ct. 2724, 147 L.Ed.2d 988 (2000), the Sixth Circuit indicated that a supervisor's failure to supervise or to control his subordinates was not actionable, "unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* at 300 (internal quotation marks and citation omitted). Since there is no evidence that Brown directly participated in or implicitly authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct, the evidence fails to raise a genuine issue of material fact on Plaintiff's theory that Brown can be held liable under § 1983 for his failure to supervise his subordinates.

Based upon the foregoing, the Court concludes that Brown is entitled to summary judgment on Plaintiff's individual capacity claims against him under § 1983.[24]

---

23. Notably, the only decision cited by Plaintiff in support of this theory of liability against Brown is *Harris,* wherein the Supreme Court addressed the liability of a municipality, the City of Canton, rather than that of a supervisor.

24. Throughout her memorandum opposing Brown's motion, Plaintiff cites the portions of Brown's deposition testimony wherein he indicated that Riverside was a dangerous, different type of place to be a police officer and used language which could be interpreted as describing that municipality as a combat or battle zone. To the extent that the Plaintiff is arguing that this deposition testimony serves as the basis for imposing liability upon Brown under § 1983, this Court is unable to agree. As an initial matter, Brown was describing Riverside as a dangerous place to be a police officer, because of the attitude of its residents toward law enforcement. For instance, he testified that, during his tenure of Chief of Police of Riverside, which lasted less than two years, seven of Riverside's officers were physically assaulted by citizens and two others were shot at. In addition, Brown indicated that Riverside's detectives were unable to

Brown argues that he is also entitled to summary judgment on Plaintiff's state law claims, to the extent that any such claims have been asserted against him. In particular, Brown argues that he is immune from liability under state law in accordance with § 2744.03(A)(6) of the Ohio Revised Code. This Court agrees.[25] Section 2744.03(A)(6) provides:

> (6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies: (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

The circumstances presented by this litigation are not covered by either § 3314.07, which deals with the immunities of sponsors of community schools, or § 3746.24, which addresses the immunity of certain individuals working with hazardous substances. In addition, there is no evidence that Brown was acting manifestly outside the scope of his employment or that he acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. Finally, Plaintiff has pointed to no provision in the Ohio Revised Code which would expressly impose liability upon Brown under the present circumstances. Indeed, Plaintiff cites only § 2744.02, which deals with the immunity of political subdivisions, like Riverside, and the exceptions to that immunity. Given that Brown is not a political subdivision (*see* § 2744.01(F) (defining political subdivision)), § 2744.02 is irrelevant to the question of whether Brown can be held liable for Plaintiff's state law claims. Accordingly, the Court concludes that Brown is entitled to summary judgment on Plaintiff's state law claims.

Based upon the foregoing, the Court sustains Brown's Motion for Summary Judgment (Doc. # 47) in its entirety.

B. *Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35) and Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60)*

As an initial matter, the individual Defendants are entitled to summary judgment on Plaintiff's official capacity claims against them, since Riverside is a party to this litigation. *See E.J., supra.* Accordingly, the Court sustains the Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60), as it re-

---

wear coats and ties on the job, because the citizens would not accept someone dressed in that manner. Therefore, this Court cannot accept the Plaintiff's implicit point that this deposition testimony raises a genuine issue of material fact as to whether the police had created a dangerous environment for the residents of Riverside.

**25.** Brown also argues that he is immune in accordance with § 2744.03(A)(1). Given that the Court concludes that he is immune under § 2744.03(A)(6), it is not necessary to address the alternative argument.

lates to the official capacity claims against Onello, Curp, Lommatzsch, Reynolds, Doan, Best, Mike Smith, Weaver, Alig, Craine, Carlton, Naff, Kronenberger and Smith.

The Court now turns the Plaintiff's individual capacity claims against the individual Defendants and her claims against Riverside. As a means of analysis, the Court will initially rule upon the parties' motions as they relate to the Plaintiff's individual capacity claims against Onello, Curp, Lommatzsch, Reynolds, Doan, Best, Mike Smith, Weaver and Alig. The Court will then turn to the motions as they relate to Plaintiff's individual capacity claims against Craine, Carlton, Naff, Kronenberger and Smith, before ruling on her claims against Riverside.

*a. Plaintiff's Individual Capacity Claims against Onello, Curp, Lommatzsch, Reynolds, Doan, Best, Mike Smith, Weaver and Alig*

 For reasons which follow, the Court concludes that Onello, Curp, Lommatzsch, Reynolds, Doan, Best, Mike Smith and Weaver are entitled to summary judgment on Plaintiff's individual capacity claims against them. As is indicated above, Onello is alleged to be the City Manager, while Curp is alleged to be Riverside's Mayor. Lommatzsch, Reynolds, Doan, Best, Mike Smith and Weaver are alleged to be members of the Riverside City Council. Alig was the Chief of Riverside's Fire Department when the events giving rise to this litigation occurred. In her Amended Complaint, the Plaintiff lists these individuals and identifies them. *See* Doc. # 23 at ¶¶ 7–9 and 13. In addition, she alleges in the "Facts" section of that pleading, rather than in one of the 23 claims for relief set forth therein, that the failure of, *inter alia*, these Defendants "to implement appropriate policies and procedures, communicate lawful policies and procedures, training, education, and appro-

priate supervision in the use of pepper spray and medical needs of prisoners amounts to gross negligence and a deliberate indifference to the safety of the citizens of Riverside, Ohio[,] which gross negligence was a proximate cause of the injuries and damages suffered by Plaintiff, providing or [sic] directly liability [sic] against the City, jointly and severally for compensatory and punitive damages." *Id.* at ¶ 34. Those Defendants are not otherwise mentioned in Plaintiffs' Amended Complaint.

If Plaintiff is attempting to impose liability on any one or more or all of those Defendants under § 1983, in accordance with a supervisory liability theory and one or more of them was the supervisor of Craine, Carlton, Naff, Kronenberger and/or Smith, the employees of Riverside who committed the acts which are alleged to have deprived Cabaniss of his constitutional rights, there is simply no basis for imposing liability on Onello, Curp, Lommatzsch, Reynolds, Doan, Best, Mike Smith, Weaver and/or Alig under such a theory. There is no evidence that any of them was personally involved in the incidents which gave rise to this litigation or that any condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct underlying them. *Turner, supra.* Moreover, for reasons set forth above in the Court's discussion of Brown's request for summary judgment, there is no alternative basis for imposing liability upon these Defendants under § 1983.

In addition, these Defendants are also entitled to summary judgment on Plaintiff's claims under state law, since there is no evidence that any of them acted outside the scope of his or her employment with Riverside or with malicious purpose, in bad faith, or in a wanton or reckless manner. *See* § 2744.03(A)(6). In addition, no provision of the Ohio Revised Code expressly

imposes liability upon a mayor, council member or city manager for the tortious behavior of municipal employees. *Id.*

Accordingly, the Court sustains the Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60), as it relates to the individual capacity claims against Onello, Curp, Lommatzsch, Reynolds, Doan, Best, Mike Smith, Weaver and Alig.

### b. Plaintiff's Individual Capacity Claims against Craine, Carlton, Naff, Kronenberger and Smith

Plaintiffs have set forth a number of claims against these Defendants in their individual capacities, under both federal and state law. As a means of analysis, the Court will discuss the parties' requests for summary judgment on those claims in the order in which they appear in the Plaintiff's Amended Complaint, discussing related claims together.

However, before engaging in that analysis, the Court will briefly review the doctrine of qualified immunity, since · these individual Defendants rely upon that doctrine in moving for summary judgment and in opposing that filed by Plaintiff. The Supreme Court has held that government officials are protected by qualified immunity, if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). For a right to be "clearly established," the contours of the right must be sufficiently clear that a reasonable official would understand that his or her conduct violates that right. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In *Anderson,* the Supreme Court explained that "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has pre-

viously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640, 107 S.Ct. 3034. Of course, the doctrine of qualified immunity applies to more than just excessive-force claims or even claims under the Fourth Amendment generally. Rather, as the Supreme Court held in *Harlow,* it will protect an employee of a governmental entity from liability under § 1983, as long as he has not violated a clearly established federal statutory or constitutional right. 457 U.S. at 818, 102 S.Ct. 2727. In *Gray v. City of Detroit,* 399 F.3d 612 (6th Cir.2005), the Sixth Circuit restated the test which must be applied to determine whether an individual is protected by the doctrine of qualified immunity:

> This Court has adopted a three step analysis in determining when qualified immunity applies. *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 900– 901 (6th Cir.2004). First, while viewing the facts in the light most favorable to the plaintiff, the Court determines whether a violation of plaintiff's constitutional rights has occurred. *Id.* Second, the Court asks if the violation "involved a clearly established constitutional right of which a reasonable person would have known." *Id.* Third, the Court determines if the plaintiff has offered evidence sufficient to show that the official's conduct was objectively unreasonable in light of the clearly established constitutional right at issue. *Id.* A negative answer to any of the three questions means that the officer is entitled to qualified immunity.

*Id.* at 615.

 In her First Claim for Relief, Plaintiff has set forth a claim under § 1983, alleging that Craine, Carlton and Naff violated Cabaniss' rights under the Fourth Amendment by using excessive force.[26] As an initial matter, this Court

**26.** The First Claim for Relief also contains an allegation that the officers violated Cabaniss'

agrees with Plaintiff that this claim of excessive force is governed by the Fourth Amendment. In *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir.2002), *cert. denied*, 537 U.S. 1104, 123 S.Ct. 866, 154 L.Ed.2d 772 (2003), the Sixth Circuit held that the Fourth Amendment is applicable to the use of excessive force as long as the person who has been seized remains in the custody of the arresting officers. Herein, since Cabaniss remained in the custody of the arresting officers, Craine, Carlton and Naff, from the time of his arrest, through the time he suffered the injuries which led to his death, the Court must apply the Fourth Amendment to Plaintiff's First Claim for Relief. This claim is predicated upon the premise that Carlton used excessive force when he sprayed Cabaniss with pepper spray, while the latter was handcuffed, seated in the rear of the officer's cruiser. As is indicated above, after Cabaniss had been handcuffed and placed in the rear of Carlton's cruiser, he was observed kicking the plexiglass partition that divides the front from the rear of that vehicle, as well as hitting his head against the plastic divider. Carlton told Cabaniss a number of times to stop kicking and warned the latter that, if he did not, he (Carlton) would use pepper spray on him (Cabaniss). As a result, Cabaniss stopped kicking the divider.[27] Plaintiff and the officers move for summary judgment on this claim, and the Court begins its analysis by reviewing the standards that are applicable to all excessive-force claims under the Fourth Amendment.

In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that excessive-force claims under the Fourth Amendment are properly analyzed under that constitutional provision's objective reasonableness standard. *Id.* at 388, 109 S.Ct. 1865. The *Graham* Court explained further:

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. See *Terry v. Ohio*, *supra*, 392 U.S. [1, 20–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, *Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), nor by the mistaken execution of a valid search warrant on the wrong premises, *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d [1028, 1033 (2d Cir.

rights under the Eighth Amendment, because their use of force constituted cruel and unusual punishment. It is axiomatic, however, that the Cruel and Unusual Punishment Clause of the Eighth Amendment applies only after an individual has been convicted. *See e.g., Bass v. Robinson*, 167 F.3d 1041, 1048–49 (6th Cir.1999). Since there is no evidence that Cabaniss had been convicted before the officers used allegedly unreasonable force against him, the Court need not discuss this aspect Plaintiff's First Claim for Relief further.

Parenthetically, a pretrial detainee can recover under the Due Process Clause of the Fourteenth Amendment for a deprivation that amounts to deliberate indifference.

**27.** Plaintiff alleges in her First Claim for Relief that the officers also used excessive force by throwing Cabaniss into the rear of Carlton's cruiser, striking him and deliberately causing him to fall. *See* Doc. # 23 at ¶ 38. There is, however, no evidence that Craine, Carlton and/or Naff threw Cabaniss into the rear of Carlton's cruiser, struck him or deliberately caused him to fall.

1973) ], violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. See *Scott v. United States,* 436 U.S. 128, 137–139, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); see also *Terry v. Ohio,* supra, 392 U.S., at 21, 88 S.Ct. 1868 (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard"). An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. See *Scott v. United States, supra,* 436 U.S., at 138, 98 S.Ct. 1717, citing *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

*Id.* at 396–97, 109 S.Ct. 1865. Relevant factors to consider when assessing the reasonableness of the use of force include the severity of the crime at issue, the immediate threat the suspect poses to the safety of the officer or others, the suspect's resistance, if any, and the possibility of flight. *Id.* at 396, 109 S.Ct. 1865.

In arguing that she is entitled to summary judgment as to liability on this claim and that Craine, Carlton and Naff are not, Plaintiff places primary reliance upon *Champion v. Outlook of Nashville, Inc.,* 380 F.3d 893 (6th Cir.2004), *cert. denied,* 544 U.S. 975, 125 S.Ct. 1837, 161 L.Ed.2d 725 (2005). That decision arose out of the death of a 32-year old male, Calvin Champion ("Champion"), who was non-responsive and unable to care for himself as a result of being autistic. One day, an employee of the institution where he resided had taken Champion on an excursion with her son. While attempting to drive Champion and her son away from a shopping area, the employee lost control of Champion.[28] As a consequence, police were called, and three officers ultimately arrived at the location. The three were able to bring Champion to the ground and got him under control through the use of pepper spray, and by placing him in handcuffs and leg hobbles. Thereafter, the officers continued to apply pressure to Champion's back, forcing his face into the ground and making it difficult for him to breathe, and continued to spray him in the face with pepper spray, which exacerbated his breathing problems. The officers engaged in that activity, even though Champion was in their control and had ceased all resistance. Champion began to vomit and died short time later.[29] His father and sister brought the action, setting forth, *inter alia,* a claim under § 1983, alleging that

**28.** As they drove from the shopping area, Champion, whose seat belt had not been fastened, began to hit himself in the head and bite himself on the hand. As a result, the employee stopped the vehicle, after which both she and Champion got out. Champion then began to rub the employee's hand all over his head, a technique which, unbeknownst to the employee, he had used in the past to calm down. The employee then became frightened and locked herself in her vehicle from which she called the police.

**29.** When paramedics arrived, one of them observed Champion vomit and then exhale as if he had taken his last breath. Immediately thereafter, Champion ceased to have a pulse.

each of the officers had violated Champion's rights under the Fourth Amendment by using excessive force to seize him. That excessive force claim was predicated solely upon the officers' actions, after they had been able to get control of Champion by handcuffing him and placing leg hobbles on him. After the jury had returned a sizeable verdict in favor of the plaintiff and the District Court had denied defendants' post trial motions, the defendants appealed. The Sixth Circuit affirmed. With respect to the question of whether the officers had violated Champion's rights under the Fourth Amendment, the Sixth Circuit wrote:

> "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The test's "proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865. To take the facts in a light most favorable to Plaintiffs is to assume that the Officers lay on top of Champion, a mentally retarded individual who had stopped resisting arrest and posed no flight risk, and sprayed him with pepper spray even after he was immobilized by handcuffs and a hobbling device. The use of such force is not objectively reasonable....

*Id.* at 901.

*Champion* is distinguishable from the present situation and, therefore, does not control the question of whether any party is entitled to summary judgment on this claim. Therein, officers used pepper spray on Champion, after he had ceased all resistance and the officers had complete control of him. Herein, by contrast, Cabaniss was continuing to resist, as evidenced by his disorderly behavior in the rear of the cruiser, and the officers had not gained complete control over him, given that he ignored Carlton's directive to stop that behavior.

Of course, merely because the decision upon which Plaintiff relies is distinguishable, does not mean that the officers are entitled to summary judgment on this claim. However, given that courts have held that police officers have not used excessive force in violation of the Fourth Amendment under analogous circumstances, the Court concludes that Craine, Carlton and Naff are entitled to summary judgment on the Plaintiff's First Claim for Relief. In *Garrett v. Athens–Clarke County, Ga.,* 378 F.3d 1274 (11th Cir.2004), for instance, the Eleventh Circuit held that police officers had not violated the plaintiff's right under the Fourth Amendment right to be free from excessive force by, *inter alia,* using pepper spray in an effort to prevent him from kicking after he had been arrested and handcuffed. In *Moore v. City of Lincoln,* 2005 WL 3455123 (D.Neb.2005), the court concluded that a police officer had not violated the plaintiff's Fourth Amendment rights, by spraying him with pepper spray when he was kicking, while handcuffed in the back of a police cruiser. Moreover, it bears emphasis that Cabaniss risked harming himself by hitting his head against the plexiglass divider, which further demonstrates that Carlton's use of pepper spray was objectively reasonable. In *Monday v. Oullette,* 118 F.3d 1099, 1104–05 (6th Cir.1997), the Sixth Circuit affirmed the decision of the District Court to grant defendants judgment as a matter of law on plaintiff's excessive force claim, arising out of the use of pepper spray to subdue him, because

the police feared would injure himself if not taken into custody.

Accordingly, the Court concludes that the use of pepper spray by Carlton on Cabaniss was, as a matter of law, not objectively unreasonable,[30] and that, therefore, the use of that substance did not constitute excessive force in violation of the Fourth Amendment.[31] Consequently, the Court sustains the Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60), and overrules the Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35), as those motions relate to Plaintiff's First Claim for Relief.

The Court will discuss Plaintiff's Second through Fifth Claims for Relief together, since they are somewhat related. With her Second Claim for Relief, Plaintiff sets forth a claim under § 1983, alleging that Craine, Carlton and Naff violated Caban-

iss' rights under the federal constitution by failing to protect him. With her Third Claim for Relief, Plaintiff sets forth an identical claim under § 1983 against Kronenberger and Smith. With her Fourth Claim for Relief, Plaintiff sets forth a claim under § 1983, alleging that Craine, Carlton and Naff violated Cabaniss' rights under the Due Process Clause of the Fourteenth Amendment by failing to protect him. With her Fifth Claim for Relief, Plaintiff sets forth an identical claim under § 1983 against Kronenberger and Smith.[32] Plaintiff's Second through Fifth Claims for Relief share the common denominator that they are predicated upon the theory that Craine, Carlton, Naff, Kronenberger and/or Smith owed a constitutional duty to Cabaniss to protect him from harm. In particular, Plaintiff alleges that these Defendants failed to protect Cabaniss from doing something which would cause his own death.[33] *See* Doc. # 23 at ¶¶ 44, 48, 52

---

**30.** After Cabaniss had been sprayed with pepper spray, Carlton transported him to the Riverside Police/Fire Station, where the residue from that spray was removed from Cabaniss' face with a garden hose. There is no evidence that a strong current of water was emitted from the garden hose. If Plaintiff's First Claim for Relief is, in part, based upon the premise that using a garden hose to clean the residue from pepper spray from Cabaniss' face, the Court concludes that the Defendants are entitled to summary judgment on that claim, since it is, as a matter of law, not objectively unreasonable for an officer to act in that manner.

**31.** In his declaration, Marsh states in conclusory fashion that Carlton's use of pepper spray on Cabaniss constituted excessive force. It is axiomatic that a party does not raise a genuine issue of material fact by submitting the affidavit of an expert witness which is devoid of meaningful analysis or reasoning. *Brainard, supra.* Therefore, such statements in Marsh's declaration do not raise a genuine issue of material fact.

**32.** In her Motion for Summary Judgment, Plaintiff suggests that a violation of the Due Process Clause of the Fourteenth Amendment

will necessarily also violate the similar provision contained in the Ohio Constitution. *See* Doc. # 35 at 18–19. Plaintiff may suggesting that her Fourth and Fifth Claims for Relief are also predicated on the Ohio Constitution, even though .each is captioned in bold lettering as a due process claim under § 1983. Section 1983 provides a remedy for one who has been denied a *federal* right by someone acting under color of law. *See Mezibov v. Allen,* 411 F.3d 712, 716 (6th Cir.2005) (noting that there are two elements of a § 1983 claim, "(1) the defendant was acting under color of state law, and (2) the offending conduct deprived the plaintiff of rights secured under *federal* law") (emphasis added). Nevertheless, the Court need not separately discuss claims under the due process component of the Ohio Constitution, since, as Plaintiff contends, such claims are indistinguishable from claims under the Due Process Clause of the Fourteenth Amendment.

**33.** If Plaintiff's Second and Fourth Claims for Relief are predicated upon the allegation that Craine and/or Naff violated Cabaniss' constitutional rights, by failing to prevent Carlton from spraying him with pepper spray, those Defendants are entitled to summary judgment

and 56. It bears emphasis that these four claims are not predicated upon the allegations that these individual Defendants failed to provide medical care to Cabaniss, since that alleged failure is the subject of Plaintiff's Sixth through Ninth Claims for Relief. The Court begins its analysis by exploring the legal underpinnings of the duty upon which Plaintiff relies.

In *Jones v. Reynolds*, 438 F.3d 685 (6th Cir.2006), the Sixth Circuit restated principles applicable to a claim that liability can be imposed upon governmental employees for failing to protect an individual:

> "[N]othing in the language of the Due Process Clause itself," the Court has instructed, "requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). While "[a] State may, through its courts and legislatures, impose such affirmative duties of care and protection upon its agents as it wishes," the Court has reasoned that such duties will not be "thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment." *Id.* at 202–03, 109 S.Ct. 998. The Court has recognized one exception to the *DeShaney* rule: When the State has so restrained the liberty of the individual that it renders him unable to care for himself, the State has a special relationship with the individual and thus an affirmative duty to protect him. *Id.* at 200, 109 S.Ct. 998. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* Accordingly, "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the deprivation of liberty triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.* (internal quotation marks omitted).

Since *DeShaney*, this circuit has recognized a second exception to the prohibition against holding public officials constitutionally responsible for private acts of violence. Relying on the following language from *DeShaney*—"[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them," *id.* at 201, 109 S.Ct. 998—we have held that when the State "cause[s] or greatly increase[s] the risk of harm to its citizens ... through its own affirmative acts," it has established a "special danger" and a duty to protect its citizens from that risk. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir.1998). To bring a "state created danger" claim, the individual must show: "(1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence

---

on such claims. Under certain circumstances, a police officer can be held liable under § 1983, for failing to prevent a fellow officer from violating the constitutional rights of a suspect by using excessive force. *Durham v. Nu'man*, 97 F.3d 862, 866–67 (6th Cir.1996), *cert. denied*, 520 U.S. 1157, 117 S.Ct. 1337, 137 L.Ed.2d 496 (1997). Herein, the Court has concluded, as a matter of law, that Carlton did not use excessive force. Therefore, there would be no basis for imposing liability upon Craine and/or Naff for failing to prevent Carlton from violating Cabaniss' rights under the Fourth Amendment.

by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff." *Cartwright v. City of Marine City,* 336 F.3d 487, 493 (6th Cir.2003); *see Kallstrom,* 136 F.3d at 1066.

*Id.* at 690.

Applying those principles to this dispute, this Court concludes that the evidence fails to raise a genuine issue of material fact as to whether Craine, Carlton, Naff, Kronenberger and/or Smith can be held liable for failing to protect Cabaniss from causing his own death. Cabaniss died after he ignored the command of Craine and Carlton to remain seated in the police cruiser and then got out of that vehicle, contemporaneously falling and hitting his head, after which he lunged away from Carlton, who was sitting next to him, and struck his head on the ground. Although Cabaniss' liberty had been restrained at the time he so acted, there is no evidence that the restraint on his liberty prevented his protecting himself from causing his own death. Moreover, the second manner of establishing a failure to protect claim recognized by the Sixth Circuit is inapplicable, given that these Defendants are alleged to have failed to protect Cabaniss from himself, rather than from some third party.

Accordingly, the Court sustains the Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60), and overrules the Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35), as those motions relate to Plaintiff's Second through Fifth Claims for Relief.

With her Sixth Claim for Relief, Plaintiff sets forth a claim under § 1983, alleging that Craine, Carlton and Naff violated Cabaniss' rights under the federal constitution by failing to provide him appropriate medical care. With her Seventh Claim for Relief, Plaintiff sets forth an identical claim under § 1983 against Kronenberger and Smith. With her Eighth Claim for Relief, Plaintiff sets forth a claim under § 1983, alleging that Craine, Carlton and Naff violated Cabaniss' rights under the Due Process Clause of the Fourteenth Amendment by failing to provide him appropriate medical care. In her Ninth Claim for Relief, Plaintiff sets forth an identical claim under § 1983 against Kronenberger and Smith. These claims are discussed together, because they are all predicated upon on the theory that Craine, Carlton, Naff, Kronenberger and/or Smith violated Cabaniss' constitutional rights, by failing to provide him adequate medical care.

In *Watkins v. City of Battle Creek,* 273 F.3d 682 (6th Cir.2001), the Sixth Circuit reiterated that "[t]o sustain a cause of action under § 1983 for failure to provide medical treatment, plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.' *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)." *Id.* at 686. Therein, the Sixth Circuit elaborated upon the deliberate indifference standard:

Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to Watkins's health and safety. *Farmer v. Brennan,* 511 U.S. 825, 835–37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This standard is subjective. It is not enough that there was a danger of which an officer should objectively have been aware. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114

S.Ct. 1970. If an officer fails to act in the face of an obvious risk of which he should have known but did not, the officer has not violated the Eighth or Fourteenth Amendments. *Id.* at 837–38, 114 S.Ct. 1970.

*Id. See also Estate of Owensby v. City of Cincinnati,* 414 F.3d 596, 602–03 (6th Cir. 2005).[34] In *Turner v. City of Taylor,* 412 F.3d 629 (6th Cir.2005), the Sixth Circuit elaborated upon "serious medical needs":

> Further, a constitutional claim for denial of medical care has an objective component that requires the existence of a "sufficiently serious" medical need. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*

*Id.* at 646.

Herein, construing the evidence in the manner most favorable to the Plaintiff, the Court concludes that the evidence fails to raise a genuine issue of material fact as to whether Craine, Carlton, Naff, Kronenberger and/or Smith was deliberately indifferent to Cabaniss' serious medical needs. As an initial matter, assuming for sake of argument that Cabaniss had some sort an injury when the officers arrived outside Fugate's residence, there is no evidence that any Defendant was deliberately indifferent to Cabaniss' medical needs. On the contrary, paramedics were summoned, and Kronenberger attempted to examine Ca-

baniss, although the latter would neither permit the paramedic to touch him nor cooperate in any manner. Moreover, there is no evidence that whatever injury Cabaniss had sustained constituted a serious medical need.

■ Plaintiff however focuses upon Cabaniss' alleged suicidal tendencies. The evidence of those tendencies is set forth in Fugate's affidavit, wherein he states that he informed officers that Cabaniss was suicidal and had attempted suicide in the past.[35] However, there is no evidence that Cabaniss died as a result of committing suicide. In other words, there is no evidence that Cabaniss fell and struck his head on the concrete as a result of intentionally throwing himself on the ground.[36] Moreover, to the extent that these claims are based upon a failure to assess Cabaniss' medical condition in adequate fashion, which resulted in the failure to discover that he was suicidal, it bears emphasis that paramedics came to the location where Cabaniss had been arrested in order to determine whether he was in need of medical care. Kronenberger attempted to assess his needs in that regard, but Cabaniss refused to cooperate. When Kronenberger questioned Cabaniss about his medical condition, the latter swore at the paramedic, while threatening him and his family, rather than providing information concerning his medical condition. The Plaintiff has cited no case in which a court has held

**34.** *Estate of Owensby* arose out of the death of plaintiff's decedent, as a result of and during his encounter with police officers. The Sixth Circuit analyzed the plaintiff's claim that the officers had failed to obtain medical care for her decedent under the deliberate indifference standard applicable to pretrial detainees which the Sixth Circuit had restated in *Watkins.* Therefore, it is appropriate to apply that standard herein.

**35.** Interestingly, despite the fact that his friend was suicidal, Fugate invited Cabaniss

over to his house, so that the latter was able to consume one and one-half pints of whiskey and, after Cabaniss became too disruptive, took him outside and left him alone to sober up.

**36.** Craine summoned medical assistance for Cabaniss immediately after he fell. Therefore, Cabaniss rights under the Due Process Clause were not violated, by a failure to provide medical care after he had stumbled and fallen.

that a police officer or paramedic acting similarly to the Defendants herein was deliberately indifferent to the serious medical needs of someone similarly situated to Cabaniss. Nor has Plaintiff cited authority in support of the proposition that police officers or paramedics arresting a drunken and disorderly individual are required by the Due Process Clause of the Fourteenth Amendment to perform a full psychological examination of that individual at the time of his arrest, in order to determine whether he presently has suicidal tendencies.[37]

Accordingly, the Court sustains the Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60), and overrules the Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35), as those motions relate to Plaintiff's Sixth through Ninth Claims for Relief.

With her Tenth Claim for Relief, Plaintiff sets forth a survivorship claim, brought under § 2305.21 of the Ohio Revised Code against Craine, Carlton, Naff, Kronenberger and Smith, predicated upon the incidents giving rise to First through Ninth Claims for Relief. With her Eleventh Claim for Relief, Plaintiff sets forth a wrongful death claim, brought in accordance with § 2105.01 of the Ohio Revised Code against Craine, Carlton, Naff, Kronenberger and Smith, predicated upon these incidents. With her Twelfth Claim for Relief, Plaintiff has set forth a survivorship claim under § 2305.21, which is indistinguishable from her Tenth Claim for Relief. With her Twentieth Claim for Relief, Plaintiff sets forth a claim under state law that Craine, Carlton, Naff, Kronenberger and Smith acted willfully and wantonly

and, thus, are not immune from Plaintiff's state law claims against them. With her Twenty–First Claim for Relief, Plaintiff sets forth a state law claim of intentional infliction of emotional distress against Craine, Carlton, Naff, Kronenberger and Smith. Those Defendants move for summary judgment on these claims, arguing that they are immune from liability on same in accordance with § 2744.03(A)(6), which provides that, unless one or more of three exceptions apply, employees of political subdivisions are immune. Two of those exceptions, that the employee's acts were manifestly outside the scope of his employment and that liability is expressly imposed by another provision in the Ohio Revised Code (see § 2744.03(A)(6)(a) and (c)), are clearly inapplicable in this case. Indeed, Plaintiff does not suggest that either is applicable. Under the third exception, liability can be imposed if the employee's acts were done with a malicious purpose, in bad faith or in a wanton or reckless manner. Herein, Plaintiff relies upon the assertion that these individual Defendants acted in a wanton or reckless manner. Indeed, in her Twentieth Claim for Relief, Plaintiff alleges that Craine, Carlton, Naff, Kronenberger and Smith acted willfully and wantonly and, thus, are not immune from Plaintiff's state law claims against them. The Court begins its analysis by reviewing the applicable legal principles.

In *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 639 N.E.2d 31 (1994), the Ohio Supreme elaborated upon the meaning of acting in a wanton or reckless manner, as that phrase in used in § 2744.03(A)(6)(b):

---

37. Fugate's statement to officers concerning Cabaniss' suicidal tendencies should have given the officers a heightened state of awareness concerning the possibility of the latter committing suicide. Nevertheless, in the absence of evidence that Cabaniss actually did commit suicide by intentionally diving into the ground or that these individual Defendants could have acted differently, such a sense of heightened awareness, alone, does not raise a genuine issue of material fact as to whether any one or more or all of them was deliberately indifferent to Cabaniss' medical needs.

Defendant Chief Tyree, however, could be liable if his acts or failures to act satisfy the standard of R.C. 2744.03(A)(6)(b). We agree with appellants that the issue of wanton misconduct is normally a jury question. *Matkovich v. Penn Cent. Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652. The standard for showing wanton misconduct is, however, high. In *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 363 N.E.2d 367, syllabus, we held that wanton misconduct was the failure to exercise any care whatsoever. In *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 96–97, 269 N.E.2d 420, 422, we stated, "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury. *Id.* at 97, 269 N.E.2d at 423. In *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705, we employed the recklessness standard as enunciated in 2 Restatement of the Law 2d, Torts (1965), at 587, Section 500: "The actor's conduct is in reckless disregard of the safety of others if * * * such risk is substantially greater than that which is necessary to make his conduct negligent."

*Id.* at 356, 639 N.E.2d at 35. Examining the actions of Craine, Carlton, Naff, Kronenberger and Smith, this Court, after having construed the evidence in the manner most favorable to Plaintiff,[38] concludes that the evidence fails to raise a genuine issue of material fact as to whether any of those Defendants acted in a wanton or reckless manner. Therefore, those Defendants are immune from Plaintiff's state law claims.

 When Craine and Carlton arrived at Fugate's residence in Riverside, they observed Cabaniss, who was obviously drunk, had just broken the outdoor lamp at a neighboring residence and was spitting at the officers. As a consequence, the officers had probable cause to arrest Cabaniss for violating § 2917.11 of the Ohio Revised Code, which provides in pertinent part:

(B) No person, while voluntarily intoxicated, shall do either of the following:
(1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if the offender were not intoxicated, should know is likely to have that effect on others;
(2) Engage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another.

Therefore, it cannot be said that said that either officer acted wantonly or recklessly by arresting and handcuffing Cabaniss or by placing him in the rear of Carlton's cruiser.[39] Paramedics were called, and Kronenberger conducted a short examination of Cabaniss, although he was inhibited in doing so, because Cabaniss would not allow the paramedic to touch him and otherwise failed to cooperate.[40] Those facts

---

**38.** Naff and Smith will be absent from the following discussion, given than Plaintiff has not explained what either of those Defendants did other than be present when some of the events giving rise to this litigation occurred.

**39.** The Plaintiff has alleged that the officers threw Cabaniss into the rear of that cruiser;

however, there is no evidence that they so acted.

**40.** For instance, rather than answer Kronenberger's questions, Cabaniss swore at him and threatened to kill him and his family.

do not raise a genuine issue of material fact that any of the individual Defendants wantonly or recklessly deprived Cabaniss of medical care, while at Fugate's residence.

■ As Carlton started to drive away from that location, with Cabaniss seated in the rear of his cruiser, the latter began to kick the plexiglass divider in that vehicle and to hit his head against it. Cabaniss ignored Carlton's numerous directives to stop the disruptive behavior and the officer's warning that he would be sprayed with pepper spray, if he did not. Therefore, the officer sprayed Cabaniss with that substance. Even if one were to assume for sake of argument that the evidence raises a genuine issue of material fact as to whether Carlton's actions in that regard constituted negligence, the evidence does not raise a genuine issue of material fact that those actions demonstrated perversity on the part of Carlton or that he created a risk, substantially greater than negligence.

■ Carlton then drove Cabaniss to the Riverside Police/Fire Station, where the residue from the pepper spray was washed off of him with a garden hose. There is no evidence that the hose released a strong spray of water which caused Cabaniss to suffer harm. The rear door to Carlton's cruiser was, however, left open. When Cabaniss indicated that he felt better and asked permission to stand, the officers indicated that he could not. Although Cabaniss initially complied with the officers' directive, he nevertheless voluntarily got out of the cruiser and took some steps, before falling and hitting his head. The Court will assume that the evidence would support a finding that Carlton and Craine acted negligently by leaving the rear door to the cruiser open, which allowed Cabaniss to escape and suffer the head injury which led to his death. The evidence does not, however, raise a

genuine issue of material fact that either acted perversely in that regard or that the risk created thereby was substantially greater than negligence. *Fabrey, supra.* Therefore, the evidence does not raise a genuine issue of material fact as to whether either officer acted wantonly or recklessly in that regard. After Cabaniss had fallen and injured himself, medical aid was summoned, and he was transported to Miami Valley Hospital. The post-injury actions of the individual Defendants did not remotely constitute wanton or reckless behavior.

Accordingly, the Court sustains the Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60), and overrules the Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35), as those motions relate to Plaintiff's Tenth through Twelfth, Twentieth and Twenty–First Claims for Relief.

With her Eighteenth Claim for Relief, Plaintiff sets forth a claim under § 1983 against Craine, Carlton and Naff, alleging that they violated Cabaniss' constitutional rights by handcuffing him, spraying him with pepper spray and with a hose and refusing to allow him to stand, thus placing him in a dangerous and potentially dangerous position, while creating a special relationship which imposed upon them the obligation of protecting Cabaniss and providing medical care to him. With her Nineteenth Claim for Relief, Plaintiff sets forth a claim under § 1983 and state law against Craine, Carlton and Naff, alleging that they deprived Cabaniss of his constitutional rights and assaulted and battered him, by restraining him, throwing him into a police cruiser, spraying him with pepper spray and water and allowing him to hurt himself. Based upon the foregoing discussion, *supra* at 888–99, these Defendants are entitled to summary judgment on this claim. Accordingly, the Court sustains the

Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60), and overrules the Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35), as those motions relate to the Plaintiff's Eighteenth and Nineteenth Claims for Relief.

In sum, the Court sustains the Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60), and overrules the Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35), as those motions relate to all the Plaintiff's claims against Craine, Carlton, Naff, Kronenberger and Smith.[41]

### c. Plaintiff's Claims against Riverside

Plaintiff has set forth both federal and state law claims against Riverside. As a means of analysis, the Court will initially discuss the parties' motions as they relate to Plaintiff's federal law claims, following which it will turn to her state law claims against Riverside.

■ With her Fourteenth Claim for Relief, Plaintiff has set forth a claim under § 1983 against Riverside, alleging that it is liable for the constitutional violations of Craine, Carlton and Naff, because those violations were caused by policies, practices and customs of Riverside. With her Fifteenth Claim for Relief, Plaintiff has set forth an identical claim under § 1983 against Riverside, alleging that it is liable for the constitutional violations of Kronenberger and Smith, because those violations

were caused by policies, practices and customs of Riverside. With her Sixteenth Claim for Relief. Plaintiff has set forth a claim under § 1983 against Riverside, alleging that it is liable for the constitutional violations of Craine, Carlton and Naff, because those violations were caused by its failure to train those officers. With her Seventeenth Claim for Relief, Plaintiff has set forth a claim under § 1983 against Riverside, alleging that it is liable for the constitutional violations of Kronenberger and Smith, because it failed to train those paramedics. With her Twenty–Second Claim for Relief, Plaintiff has set forth a claim under § 1983 against Riverside, alleging it is liable for the constitutional violations of its employees under a *respondeat superior* theory.

■ A plaintiff can recover from a governmental employer under § 1983, only if she is able to prove that a policy or practice of that employer caused the alleged constitutional deprivation by its employees. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is axiomatic that a failure to train employees which amounts to deliberate indifference can constitute such a policy. *City of Canton, supra.* With her Fourteenth through Seventeenth and Twenty–Second Claims for Relief, Plaintiff seeks to impose liability on Riverside under *Monell* and its progeny, including *City of Canton, supra.* If, however, the employees of a governmental

---

**41.** With her Thirteenth Claim for Relief, Plaintiff sets forth a civil conspiracy claim against Riverside, Craine, Carlton, Naff, Kronenberger, Smith and "others," alleging that they conspired to deprive Cabaniss of his rights under the United States and Ohio Constitutions, as well as under federal and state law, by failing to provide him adequate medical care, and fabricating a false and exculpatory version of events in order to prevent Cabaniss and his heirs from obtaining a remedy. The Court sustains the Motion of Defen-

dants Other Than George Brown for Summary Judgment (Doc. # 60), and overrules the Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35), as those motions relate to this claim. Above, the Court has concluded that the Defendants are entitled to summary judgment on Plaintiff's claims that they failed to provide medical care to Cabaniss. Moreover, there is no evidence that the Defendants fabricated a false version of events in order to prevent Cabaniss and his heirs from obtaining a remedy.

employer such as Riverside have not violated the plaintiff's constitutional rights, *Monell* liability cannot be imposed upon that governmental employer. *See e.g., Scott v. Clay County,* 205 F.3d 867, 879 (6th Cir.) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)), *cert. denied,* 531 U.S. 874, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). Therefore, since this Court has concluded above that the individual Defendants are entitled to summary judgment on Plaintiff's § 1983 claims, Riverside is entitled to summary judgment on Plaintiff's Fourteenth through Seventeenth Claims for Relief. In addition, since there is no *respondeat superior* liability under § 1983 (*see Monell, supra*), Riverside is entitled to summary judgment on Plaintiff's Twenty–Second Claim for Relief.

Accordingly, the Court sustains the Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60), and overrules the Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35), as those motions relate to Plaintiff's Fourteenth through Seventeenth and Twenty–Second Claims for Relief.

■ With her Twenty–Third Claim for Relief, Plaintiff sets forth a claim under state law against Riverside, alleging that it is liable for the wrongful acts of Craine, Carlton, Naff, Kronenberger and Smith. Riverside argues that it is entitled to summary judgment on this and any other state law claims against it, because it is immune from such claims in accordance with Ohio Revised Code § 2744.02, which provides, in pertinent part:

(A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

* * *

(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct. . . .

Looking only at § 2744.02(A)(1), Riverside is unquestionably immune from Plaintiff's state law claims against it, given that those claims were in connection with a governmental or proprietary function.[42] Nevertheless, Plaintiff presents two arguments

---

**42.** Parenthetically, the Plaintiff also argues that Ohio's statute affording immunity to political subdivisions such as Riverside does not apply to claims arising under federal law. This Court agrees and has, therefore, not applied that statute to Plaintiff's federal law claims against Riverside.

why Riverside is not protected by such immunity. *First,* Plaintiff argues that Cabaniss' death was caused by the negligent operation of a motor vehicle by employees of Riverside. *Second,* Plaintiff argues that § 2744.02 is unconstitutional. As a means of analysis, the Court will address those two arguments in the above order.

### 1. Negligent Operation of a Motor Vehicle

■ Plaintiff contends that immunity provided to a political subdivision such as Riverside by § 2744.02(A) is inapplicable, because Cabaniss' death occurred as a result of the operation of a motor vehicle by its employees and, therefore, the exception to immunity set forth in § 2744.02(B)(1) is applicable. For reasons which follow, this Court rejects Plaintiff's argument in that regard.

In support of this argument, Plaintiff relies upon *Groves v. Dayton Pub. Schools,* 132 Ohio App.3d 566, 725 N.E.2d 734 (1999), in which the Montgomery County Court of Appeals held that the operation of a motor vehicle, as that phrase is used in § 2744.02(B)(1), includes a school bus driver's negligence in assisting a handicapped student off the bus, and that, therefore, liability for the injuries suffered by the student could be imposed on the school district. However, in *Glover v. Dayton Pub. Schools,* 1999 WL 958492 (Ohio App. 1999), the same court held that the operation of a school bus did not include the injuries that a child suffered, after she had alighted from the bus and darted into a street where she was struck by a car. Therefore, the school district was immune in *Glover. See also, Doe v. Dayton City School Dist.,* 137 Ohio App.3d 166, 738 N.E.2d 390 (1999) (holding that sexual assault of a student in the first grade by an older student on a school bus did not arise

out of operation of the bus and that, therefore, the school district was immune). This dispute is closer to *Glover* than *Groves,* given that Cabaniss had gotten out Carlton's cruiser and taken a few steps, before he fell and struck his head.

### 2. Constitutionality of § 2744.02

According to Plaintiff, § 2744.02 violates the Ohio Constitution. In support of that argument, Plaintiff relies upon *Kammeyer v. City of Sharonville,* 311 F.Supp.2d 653 (S.D.Ohio 2003), wherein Judge Spiegel concluded that § 2744.02(A) violates §§ 5 and 16 of Article I of the Ohio Constitution,[43] basing that conclusion upon *Butler v. Jordan,* 92 Ohio St.3d 354, 750 N.E.2d 554 (2001), wherein three justices of the Ohio Supreme Court questioned, in dicta, whether § 2444.02(A) violates those constitutional provisions. However, given that the Ohio Supreme Court has concluded that § 2744.02(A) does not violate either § 5 or § 16 of Article I of the Ohio Constitution (*Fabrey v. McDonald Village Police Department,* 70 Ohio St.3d 351, 639 N.E.2d 31 (1994)), and, further, since that decision has not been overruled, the dicta in *Butler* is without even persuasive effect. Moreover, all courts, state and federal, to have addressed the question in the post-*Butler* world, have rejected such constitutional challenges to Ohio's political subdivision statute. *See e.g., Nagel v. Horner,* 162 Ohio App.3d 221, 833 N.E.2d 300 (2005); *Thompson v. Bagley,* 2005 WL 940872 (Ohio App.2005); *Bundy v. Five Rivers Metroparks,* 152 Ohio App.3d 426, 787 N.E.2d 1279 (2003); *Webb v. Greene County,* Case No. 3:04cv190 (S.D.Ohio 2006) (Rice, J.); *Swift v. Hickey,* 2006 WL 293790 (S.D.Ohio 2006) (Sargus, J.); *Samples v. Logan County,* 2006 WL 39265

---

**43.** Section 5 guarantees the right to a jury trial in civil cases, while § 16 provides, *inter alia,* that courts shall remain open and that every person shall have a remedy in the due course of law.

(S.D.Ohio 2006) (Smith, J.); *Armstrong v. U.S. Bank*, 2005 WL 1705023 (S.D.Ohio 2005) (Dlott, J.); *Grant v. Montgomery County Job and Family Services*, 2005 WL 2211266 (S.D.Ohio 2005) (Beckwith, C.J.). Accordingly, this Court once again rejects the proposition that § 2744.02(A) violates either § 5 or § 16 of Article I of the Ohio Constitution.

In sum, having rejected Plaintiff's challenges to Riverside's contention that it is immune from liability for Plaintiff's state law claims under § 2744.02, the Court sustains the Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60), and overrules the Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35), as those motions relate to Plaintiff's Twenty–Third Claim for Relief.

Based upon all of the foregoing, the Court sustains Brown's Motion for Summary Judgment (Doc. # 47) and the Motion of Defendants Other Than George Brown for Summary Judgment (Doc. # 60), and overrules the Plaintiff's Motion for Summary Judgment as to Liability (Doc. # 35). Accordingly, the Court directs that judgment be entered in favor of Defendants and against Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.